# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52823-1-II |
| Appellant, | |
| v. | |
| HAYDEN THOMAS VONBARGEN, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, C.J. — The State appeals the trial court's dismissal without prejudice of four counts of felony communication with a minor for immoral purposes against Hayden T. VonBargen. The trial court found VonBargen was incompetent to stand trial and that competency restoration would likely be unsuccessful. The trial court then dismissed the charges against VonBargen without prejudice.

The State contends that the trial court erred in concluding VonBargen's competency could not be restored and dismissing the charges against VonBargen without prejudice. The State further contends the trial court abused its discretion in denying its motion for reconsideration. We affirm the trial court's competency determination and dismissal of charges without prejudice, but we remand to the trial court to comply with RCW 10.77.086(1)(c) and RCW 10.77.086(4).

FACTS

VonBargen is an intellectually disabled person.[1]  The State alleged that he engaged in sexually explicit conversations with a 12 year old and charged VonBargen with four counts of felony communicating with a minor for immoral purposes.  The trial court ordered an initial evaluation for competency and VonBargen was evaluated by 2 experts:  Dr. Susannah David and Dr. Brent Oneal.

A.    EXPERT REPORTS

The State's expert, Dr. David, interviewed VonBargen, reviewed his academic, social, and medical history, and diagnosed him with "intellectual disability (mild)."  Clerk's Papers (CP) at 22.  Dr. David opined that VonBargen "lacks the capacity to assist in his defense."  CP at 24.  This opinion was based on VonBargen's "limited familiarity with his legal peril and his constitutional rights, and his likely tendency to change responses, whether accurate or not."  CP at 24.  Dr. David also opined that VonBargen's "capacity to proceed to trial could and likely would improve from the educational program at [Western State Hospital]."  CP at 25.  Dr. David elaborated:

> [S]hould the court find that [VonBargen] is not competent to stand trial and meets criteria for competency restoration treatment . . . then inpatient psychiatric treatment is recommended to assist in improving [VonBargen's] mental condition . . . . It is expected that clinically indicated treatment would help improve the understanding of the legal proceedings and the ability to assist in the defense.

CP at 25.

VonBargen's expert, Dr. Oneal, interviewed VonBargen, reviewed his personal history, and diagnosed him with intellectual disability.  Dr. Oneal also administered the Wechsler Abbreviated Scale of Intelligence-Second Edition (WASI-II) IQ test.  VonBargen's IQ score was

---

[1] We admonish respondent's counsel for her use of "mentally r*****ed" in referring to VonBargen.

73, which is in the fourth percentile and shows VonBargen's "cognitive abilities are . . . extremely low." CP at 30. The WASI-II is an "abbreviated tool" that is used to "estimate" intellectual functioning. CP at 30.

Dr. Oneal opined that due to VonBargen's intellectual disability, he "does not currently possess the basic capacity to understand the nature of the proceedings or assist in his defense." CP at 34. Dr. Oneal also opined that VonBargen "is not an appropriate candidate for . . . court-ordered competency restoration" because that process usually entails teaching about the court process and the administering of psychiatric medication, but "VonBargen's competency-related problems are the result of a developmental disability that is quite unlikely to be improved via basic teaching or psychiatric medication." CP at 34. Dr. Oneal further noted that VonBargen was not even "able to learn much of the information that he was taught during this competency evaluation." CP at 34.

B.    COMPETENCY HEARING

The trial court held a competency hearing. Both Dr. David and Dr. Oneal testified regarding their evaluations and opinions as outlined above. Dr. David also testified that while VonBargen has a disability, he can still learn. VonBargen's IQ was in the "high end for intellectual disability" and "you can expect understanding and ability to assist counsel to be restored" for a person in the high end of intellectual disability. Verbatim Report of Proceedings (VRP) (July 25, 2018) at 14, 18. Dr. Oneal testified that VonBargen is "at the 4th percentile of intellectual functioning" and "ha[s] very little ability to retain or recall information," which would hinder the ability to restore competency. VRP (July 25, 2018) at 35, 40.

The trial court found that VonBargen was not competent to stand trial. The trial court further found that "[a]lthough the experts disagreed on whether [VonBargen's] competency could be restored, the Court finds that restoration would likely be unsuccessful." CP at 38. The trial

3

court then concluded that VonBargen was "not competent to stand trial" and that "restoration . . . will likely not be successful and, as a result, the court will not order the restoration process." CP at 38.

The State filed a motion for reconsideration, which the trial court denied. The trial court ultimately dismissed the charges against VonBargen without prejudice.

The State appeals.

ANALYSIS

The State contends that competency restoration was mandatory under former RCW 10.77.086(1)(a)(i) (July 1, 2015).[2] Therefore, according to the State, the trial court erred by not ordering competency restoration, in denying the State's motion for reconsideration, and in dismissing the charges without prejudice.[3] We disagree that the trial court erred as alleged by the State, but we remand to the trial court to comply with RCW 10.77.086(1)(c) and RCW 10.77.086(4).

A.    LEGAL PRINCIPLES AND STANDARD OF REVIEW

The Fourteenth Amendment due process clause of the United States Constitution guarantees an accused person the right not to stand trial unless they are legally competent. *State v. Wicklund*, 96 Wn.2d 798, 800, 638 P.2d 1241 (1982) (citing *Drope v. Missouri*, 420 U.S. 162, 172, 95 S. Ct. 896, 904, 43 L. Ed. 2d 103 (1975)). Likewise, under RCW 10.77.050, "No

---

[2]  Our legislature recently substantially revised subsection (1)(a)(i) after VonBargen allegedly committed his offenses. *See* LAWS OF 2019, Ch. 326 §4.

[3]  The State also assigns error to the trial court's conclusion of law 2.1, which states that "[t]he defendant is not competent to stand trial." CP at 38. However, not only does the State fail to present any argument to support this assignment of error, the State agrees that both experts who testified found VonBargen was not competent. *See* RAP 10.3(a)(6) (requiring appellant to provide argument in support of issues presented for review).

incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." Under Washington law, we apply a two-part test to assess a criminal defendant's legal competency: "(1) whether the defendant understands the nature of the charges; and (2) whether [they are] capable of assisting in [their] defense." *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 862, 16 P.3d 610 (2001).

We review a trial court's competency determination for an abuse of discretion. *Id.* at 864. "A court abuses its discretion only when an 'order is manifestly unreasonable or based on untenable grounds'." *State v. Ortiz-Abrego*, 187 Wn.2d 394, 402, 387 P.3d 638 (2017) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Rhome*, 172 Wash.2d 654, 668, 260 P.3d 874 (2011)). Additionally, a trial court does not abuse its discretion by not ordering a subsequent evaluation under RCW 10.77.060 "[i]f the issue of competency is 'fairly debatable.'" *State v. McCarthy*, 193 Wn.2d 792, 803, 446 P.3d 167 (2019) (internal quotation marks omitted) (quoting *State v. Sisouvanh*, 175 Wn.2d 607, 623. 290 P.3d 942 (2012)).

We uphold a trial court's findings of fact that are supported by substantial evidence. *State v. Fuentes*, 183 Wn.2d 149, 157, 352 P.3d 152 (2015). Substantial evidence is evidence that is sufficient to persuade a fair-minded, rational person of the truth of the finding. *State v. Froehlich*, 197 Wn. App. 831, 837, 391 P.3d 559 (2017). We determine whether the findings of fact support the conclusions of law. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Our review of whether the findings of fact support the conclusions of law is de novo. *Fuentes*, 183 Wn.2d at 157. The weighing of evidence, including any inconsistencies and matters of credibility, is for the trial court; we will not reweigh such matters on appeal. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994).

We review issues of statutory interpretation de novo. *State v. Schultz*, 146 Wn.2d 540, 544, 48 P.3d 301 (2002). Our primary goal is to effectuate legislative intent. *State v. Whitaker*, 195 Wn.2d 333, 338-39, 459 P.3d 1074 (2020). To determine the legislature's intent, we first look at the statute's plain meaning, "if the plain meaning is unambiguous, we give it effect." *Id.*

Lastly, we review motions for reconsideration and the dismissal of criminal charges for an abuse of discretion. *State v. Puapuaga*, 164 Wn.2d 515, 520-21, 192 P.3d 360 (2008); *State v. Parada*, 75 Wn. App. 224, 235, 877 P.2d 231 (1994).

B.     NO ABUSE OF DISCRETION

The State argues that the trial court abused its discretion in finding of fact 1.6 because substantial evidence does not support that finding. The State also contends that the trial court abused its discretion in concluding that VonBargen's competency cannot be restored.

The trial court's finding of fact 1.6 states that "[a]lthough the experts disagreed on whether [VonBargen's] competency could be restored, the Court finds that restoration would likely be unsuccessful." CP at 38. The trial court's conclusion of 2.2 states that "[t]he restoration process will likely not be successful and, as a result, the court will not order the restoration process." CP at 38.

Here, Dr. Oneal interviewed VonBargen and opined that VonBargen "is not an appropriate candidate for . . . court-ordered competency restoration" because that process usually entails teaching about the court process and the administering of psychiatric medication, but "VonBargen's competency-related problems are the result of a developmental disability that is quite unlikely to be improved via basic teaching or psychiatric medication." CP at 34. Dr. Oneal also testified that VonBargen "has very little ability to retain or recall information" and that this would hinder the ability to restore competency. VRP (July 25, 2018) at 40. Dr. Oneal based his

6

conclusion on VonBargen's low IQ score and that VonBargen's "cognitive abilities are . . . extremely low." CP at 30. Dr. Oneal further opined that due to VonBargen's intellectual disability, he "does not currently possess the basic capacity to understand the nature of the proceedings or assist in his defense." CP at 34. Dr. Oneal noted that VonBargen was not even "able to learn much of the information that he was taught during this competency evaluation." CP at 34. While Dr. David testified to the contrary, we leave the weighing of evidence and credibility determinations to the trial court. *Hill*, 123 Wn.2d at 647.

Dr. Oneal's report and testimony are sufficient to persuade a fair-minded, rational person that competency cannot be restored for VonBargen. Thus, substantial evidence supports the trial court's finding that "[a]lthough the experts disagreed on whether [VonBargen's] competency could be restored, the Court finds that restoration would likely be unsuccessful." CP at 38. And this finding supports the trial court's conclusion of law that "restoration . . . will likely not be successful and, as a result, the court will not order the restoration process." CP at 38. Accordingly, the trial court did not abuse its discretion in not ordering competency restoration treatment.

C.     RCW 10.77.086

The State next argues that former RCW 10.77.086(1)(a)(i) required the trial court to order competency restoration treatment. We disagree.

In the alternative, the State argues (Br. of Appellant 22-23), and VonBargen acknowledges, (Br. of Respondent at 24-25) that RCW 10.77.086(1)(c) and RCW 10.77.086(4) required the trial court to commit VonBargen to a state hospital for up to 72 hours for a civil commitment evaluation. We agree.

1.      Former RCW 10.77.086(1)(a)(i)

Former RCW 10.77.086(1)(a)(i) stated:

If the defendant is charged with a felony and determined to be incompetent, until he or she has regained the competency necessary to understand the proceedings against him or her and assist in his or her own defense, but in any event for a period of no longer than ninety days, the court:

(A) Shall commit the defendant to the custody of the secretary who shall place such defendant in an appropriate facility of the department for evaluation and treatment; or

(B) May alternatively order the defendant to undergo evaluation and treatment at some other facility or provider.

RCW 10.77.086(1)(c), the section that was in effect when VonBargen allegedly committed his offense and has not been revised, states that "if the court determines . . . that the defendant is unlikely to regain competency, the court may dismiss the charges without prejudice without ordering the defendant to undergo restoration treatment." The State argues that this section does not apply because the trial court wrongly concluded that VonBargen's competency could not be restored. For the reasons discussed above, the trial court did not err in making this conclusion. Thus, RCW 10.77.086(1)(c) applies.

2.      RCW 10.77.086(1)(c) and RCW 10.77.086(4)

RCW 10.77.086(1)(c) gives the trial court the authority to dismiss charges without prejudice if it determines the defendant is unlikely to regain competency. However, RCW 10.77.086(1)(c) also states that if the court dismisses the charges without prejudice "without ordering the defendant to undergo restoration treatment, . . . the court shall order that the defendant be referred for evaluation for civil commitment in the manner provided in subsection (4) of this section." RCW 10.77.086(4) states:

> For persons charged with a felony . . . if the court . . . at any stage finds that the defendant is incompetent and the court determines that the defendant is unlikely to regain competency, the charges shall be dismissed without prejudice, and the court shall order the defendant be committed to a state hospital as defined in RCW 72.23.010 for up to seventy-two hours starting from admission to the facility, excluding Saturdays, Sundays, and holidays, for evaluation for the purpose of filing a civil commitment petition under chapter 71.05 RCW.

Thus, while the trial court did not err in ruling that restoration was not possible and properly dismissed the charges without prejudice, it failed to follow the plain language of RCW 10.77.086(1)(c) and .086(4) and order VonBargen to undergo a civil commitment evaluation.

VonBargen argues a commitment for evaluation is unnecessary because the State did not request it and the evaluation would be futile. But neither statute requires the State to request the commitment nor do they set forth any exceptions to the commitment for evaluation.

By using the word "shall," the legislature required the trial court to commit VonBargen to a state hospital for up to 72 hours for evaluation for civil commitment. RCW 10.77.086(1)(c) and .086(4); *See Khandelwal v. Seattle Mun. Court*, 6 Wn. App. 2d 323, 338, 431 P.3d 506 (2018) (when the legislature uses the word "shall," we deem it to be mandatory). Accordingly, we remand the matter back to the trial court to comply with RCW 10.77.086(1)(c) and RCW 10.77.086(4).

D.      MOTION FOR RECONSIDERATION AND SUBSEQUENT DISMISSAL

The State argues that the trial court abused its discretion in denying its motion for reconsideration. In its motion, the State solely argued that the only remedy the trial court had was to commit VonBargen for competency restoration under former RCW 10.77.086(1)(a)(i)(A), (B). As discussed above, the trial court had other options under RCW 10.77.086(1)(c) and RCW 10.77.086(4). Accordingly, tenable grounds existed to deny the State's motion for reconsideration. There was no abuse of discretion.

The State next argues the trial court abused its discretion in dismissing the charges. As discussed above, the trial court did not abuse its discretion in concluding VonBargen's competency cannot be restored. Additionally, RCW 10.77.086(1)(c) grants the trial court the authority to "dismiss the charges without prejudice" if the trial court concludes a defendant's competency cannot be restored. Accordingly, the trial court did not abuse its discretion in dismissing the charges without prejudice.

We affirm the trial court's competency determination and dismissal of charges without prejudice, but we remand with instructions for the trial court to comply with RCW 10.77.086(1)(c) and RCW 10.77.086(4).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Maxa, J.

Siddoway, J.P.T.[4]

---

[4] Judge Siddoway is a Division III judge serving with the Court of Appeals, Division II, under CAR 21(a).