

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUN 1 2 2014

~Madsen, C.J.~

**CHIEF JUSTICE**

This opinion was filed for record
at 8:00 am on Jun 12 2014

Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
)  No. 88111-1
     Petitioner, )
)
v. )  En Banc
)
BLAYNE JEFFREY COLEY, )
)
     Respondent. )  Filed    JUN 1 2 2014
)

MADSEN, C.J.—This case addresses the proper assignment of the burden of proof at a pretrial competency hearing following treatment designed to restore competency. The trial court placed the burden on respondent Mr. Blayne Coley to prove his incompetence. The Court of Appeals reversed, reasoning that the burden rests with the State to prove restoration of competency and that the trial court's mistake created structural error. We reverse the Court of Appeals and hold that the relevant statute— interpreted by its language, the context of the provision, the statutory scheme as a whole, and related provisions—places the burden on the party contesting competency where, after an evaluation ordered under RCW 10.77.060, the individual has been evaluated as competent. We also hold that the trial court did not abuse its discretion by declining to

rule on Mr. Coley's requests to proceed pro se pending a competency determination, and that Coley's request after he was deemed competent to stand trial, and therefore eligible for self-representation, was equivocal. We reverse the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

While police were responding to a domestic incident at the residence of Mr. Coley and his girl friend, Mr. Coley informed officers that his girl friend's 13-year-old son had molested him. Upon investigation, respondent Mr. Coley was charged and ultimately convicted in Grant County Superior Court of two counts of rape of a child in the second degree in violation of RCW 9A.44.076.

Prior to trial, counsel and the court raised concerns about Mr. Coley's competency on multiple occasions. Defense counsel filed a motion requesting an evaluation of Mr. Coley's mental condition in July 2008. After referring Mr. Coley to Eastern State Hospital for evaluation and treatment, the court on December 9, 2008, entered an order of competency based on the hospital's uncontested report. The court moved forward with pretrial preparations until, during an April 20, 2009, hearing regarding Mr. Coley's request to proceed pro se, Judge Evan Sperline again became concerned with Mr. Coley's competency. Judge Sperline referred Mr. Coley to Eastern State Hospital for another competency evaluation. After receiving a report from Dr. William Grant at Eastern State Hospital that Coley was incompetent, the court on July 16, 2009, ordered a 90-day stay of proceedings and referred Mr. Coley back to Eastern State Hospital for treatment designed to restore him to competency. The order staying the proceedings and ordering treatment

included a finding that "the Defendant cannot stand trial at this time because he is not competent." Clerk's Papers (CP) at 38 (90 Day Order for Stay of Proceedings for Competency Restoration Treatment); *see* RCW 10.77.084 (court shall order stay of proceedings pending treatment and restoration period).

Following the treatment period, Dr. Grant at Eastern State Hospital issued a report stating that Mr. Coley was competent to stand trial. Defense counsel submitted a report from Coley's medical expert, Dr. Jorgenson, reflecting the evaluation. The court ordered a competency hearing.

At this hearing on June 11, 2010, the court placed the burden on Mr. Coley to prove his incompetence. After hearing testimony from both doctors and Mr. Coley himself, and considering the doctors' reports and a recorded interview between Dr. Grant and Mr. Coley, Judge John Antosz determined that Mr. Coley was competent to stand trial. Judge Antosz engaged each of the three witnesses in his own line of questioning in addition to counsel's typical examination. When he made his competency ruling at the end of the hearing, Judge Antosz cited the value of all of these sources of information and emphasized his own questioning and observation.

Concurrent with these pretrial competency inquiries, Mr. Coley made several attempts to exercise his right to self-representation. He first requested self-representation in February 2009, which the court granted after a thorough colloquy. The court appointed Coley's attorney as standby counsel, and Mr. Coley represented himself as pro se counsel for a portion of the pretrial proceedings. In March 2009, however, Mr. Coley

requested that his attorney be reinstated and the court granted that request. Then, in April 2009, Coley again asserted a right to represent himself. The court denied Coley's request due to the concerns about his competency that became apparent during his conversation with the judge. CP at 31 (Def.'s Mot. for Pro Se Defense Without Counsel). As noted, the judge subsequently referred Mr. Coley to Eastern State Hospital for a competency evaluation.

At the competency hearing in June 2010, Coley again stated his desire to act pro se. The judge acknowledged Coley's request but informed him that the court could not consider his request at that time and that, if he still wanted to represent himself after an order of competency had been entered, he would need to file a new motion with the court.

On June 15, 2010, after the court had orally judged Coley competent but before the order of competency issued, the court discussed Coley's stated desire to represent himself. The judge advised Mr. Coley against pursuing his right to self-representation, and the two seemed to reach a consensus that Mr. Coley would continue to be represented by his attorney, although the record is not entirely clear.

Mr. Coley did file a written motion on June 16, 2010, titled a "Motion for Order to Speculate Right to Self Defense." The judge told Mr. Coley that he did not understand the nature of the motion and cautioned that he could not hear any comments that were meant to be presented during the trial itself. Mr. Coley responded with an unrelated question about plea bargain procedures. The subject of self-representation did not arise again.

After a mistrial, the case was retried and a jury ultimately found Mr. Coley guilty of two counts of rape of a child in the second degree. On appeal, Mr. Coley argued that the trial court incorrectly placed the burden on him to prove his incompetence at the June 2010 competency hearing, and that this error constituted a denial of his right to due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Additionally, Coley contended that the trial court's failure to adequately consider his repeated motions to represent himself without an attorney violated his right to self-representation guaranteed by article I, section 22 of the Washington Constitution. The Court of Appeals reversed, reasoning that the trial court misallocated the burden of proof at the competency hearing and this was structural error. Because the Court of Appeals ordered reversal on this ground, it did not reach Coley's argument regarding self-representation. The State petitioned for review.

ANALYSIS

1. The Burden of Proof at Competency Hearings

Reviewing courts in Washington customarily defer to the trial court's judgment of a defendant's mental competency. *State v. Ortiz*, 104 Wn.2d 479, 482, 706 P.2d 1069 (1985). This court will reverse a trial court's competency decision only upon finding an abuse of discretion. *Id.* However, the burden of proof at a competency hearing is an issue of statutory interpretation that is reviewed de novo. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010).

It is a fundamental principle of state and federal law that incompetent defendants may not stand trial. This right is protected by the due process clause of the Fourteenth Amendment. *See* U.S. CONST. amend. XIV; *Medina v. California*, 505 U.S. 437, 439, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992). Washington law implements this due process protection by statute. RCW 10.77.050 provides that "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues."

Chapter 10.77 RCW governs the procedures and standards trial courts use to judge the competency of defendants to stand trial. *State v. Wicklund*, 96 Wn.2d 798, 801, 638 P.2d 1241 (1982). Before passage of these statutes, Washington courts had wide discretion to fashion procedures for competency determinations, treatment, and restoration of competency, guided only by the broad federal due process protection. *See id.* However, believing that those with mental illness are better served by rehabilitative programs that provide medical treatment and support than traditional punitive prisons, in 1973 the state legislature adopted a comprehensive scheme for dealing with competency of criminal defendants. *See* LAWS OF 2007, ch. 375, § 1.

Under these provisions, a defendant is competent to stand trial if he has the capacity to understand the nature of the proceedings against him and he can assist in his own defense. RCW 10.77.010(15), .050. Whenever there is reason to doubt a defendant's competency to stand trial, the court must order an expert to evaluate the defendant's mental condition. RCW 10.77.060. Upon the court's own motion or the

motion of *any* party, the court may order an evaluation and report on the defendant's mental condition. *Id.* If the court finds the defendant incompetent following an evaluation under RCW 10.77.060, it must stay the proceedings and may commit the defendant for treatment. RCW 10.77.084. If the defendant is charged with a felony, the competency restoration scheme is governed by RCW 10.77.086. If instead the defendant faces a nonfelony charge, RCW 10.77.088 governs. At a competency hearing following restoration treatment in a felony case, the court must determine whether, by a preponderance of the evidence, the defendant is incompetent. RCW 10.77.086.

In this case, we must decide whether chapter 10.77 RCW places the burden of proof to prove incompetency on a criminal defendant who is claiming incompetency or on the State.

Mr. Coley agrees that he is presumed competent and that he bears the burden to prove his incompetency. *See State v. Hurst*, 173 Wn.2d 597, 603-07, 269 P.3d 1023 (2012); *Medina*, 505 U.S. at 445-46 (holding that a state statute's burden of proof allocation at competency hearings did not offend due process). However, he argues, based on the trial court's April 2009 order staying the trial and ordering competency treatment, that the presumption of competency was replaced by a presumption of incompetency that shifted the burden of proof to the State. In Coley's view, chapter 10.77 RCW describes two distinct types of hearings: initial competency hearings and competency restoration hearings. Because he had recently been found incompetent in the judge's April 2009 order staying proceedings and committing Coley for a 90-day

treatment period, Coley contends that his hearing was a restoration hearing and the State had the burden to prove restoration of Coley's competence.

Coley relies on RCW 10.77.084(1)(b), which instructs the trial court to determine whether competency has been "restored." He urges that this shows a statutory difference between competency hearings and restoration hearings. Coley contends that RCW 10.77.084(1)(b)'s instruction to determine whether "competency has been . . . restored" evinces legislative intent to place the burden on the party arguing for restoration, in this case the State.

When engaging in statutory interpretation, this court aims to give effect to legislative intent. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). The legislature memorializes its intent in the enacted statutory language, so our interpretation searches for the plain meaning of the statute's language. *Id.* We consider "the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole" to identify legislative intent. *Id.*; *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn. 2d 1, 9, 43 P.3d 4 (2002).

The sharp distinction between a competency hearing and a competency restoration hearing, urged by Coley, is not supported by the statutes or case law. RCW 10.77.084(1)(b) does instruct the court to hold a hearing to determine whether competency has been "restored." However, RCW 10.77.086 operates in tandem with and details procedures to be followed at the hearing where the defendant faces a felony charge. Under RCW 10.77.086(3), "[i]f the court finds by a preponderance of the

evidence that a defendant charged with a felony is incompetent," the court may extend the treatment period and must set a date for another competency hearing "to determine the defendant's competency."

Ultimately, if the defendant's competency can be restored through treatment, then the trial will proceed. If, however, after the statutory treatment period a defendant is found incompetent, the trial court may extend the treatment period or order alternative treatment for an additional 90-day period. The court must also set a competency hearing before the end of the second treatment period, and the defendant, the defendant's attorney, or the prosecutor may demand that the competency hearing be conducted before a jury. RCW 10.77.086(3). "If the jury or the court finds the defendant is incompetent, the charges shall be dismissed without prejudice." RCW 10.77.086(4). However, the court may order an extended period of commitment for an additional six months if the court or the jury finds the defendant is a substantial danger, the defendant is likely to commit criminal acts endangering the public, and there is a substantial likelihood that the defendant will regain competency within a reasonable time. *Id.*

Reading the statute as a whole, it is clear that the legislature did not intend to create different procedures for initial competency determinations and competency restoration hearings. Instead, the legislature created a comprehensive scheme for evaluating a defendant's competency, with a closely regulated cycle of treatment and evaluation followed by a judicial determination of competency. The scheme is intended to ensure the defendant's competency, whenever questioned, so he may be tried, but it

recognizes the defendant's interest in being free from involuntary mental health commitment and treatment. We disagree with Coley's assertion that the statute distinguishes between a competency hearing and a competency restoration hearing. Indeed, the question is the same in each hearing: the defendant's competency.

Contrary to Coley's contention, we conclude that the burden of proof placement does not depend on a distinction between a competency hearing and a restoration hearing.

Although chapter 10.77 RCW does not explicitly assign the burden of proof to either party, we interpret the statutes to place the burden on the party challenging competency. As noted, RCW 10.77.084 operates in conjunction with RCW 10.77.086 in felony cases. *See Hurst*, 173 Wn.2d at 603-04 (citing RCW 10.77.086 and .084 together as governing the initial 90-day treatment and restoration period). Because Coley faced felony criminal charges, RCW 10.77.086 applies to his competency hearings. RCW 10.77.086 asks the court to determine, by a preponderance of the evidence, whether the defendant is incompetent. So, although the overriding question is restoration, the court must answer that question by considering whether a preponderance of the evidence suggests that the defendant is incompetent. The party challenging competency has the incentive to present this preponderance of evidence. The party arguing that the defendant is competent to stand trial merely defends against any assertions of incompetency presented by the opposing party.

At different points in the proceedings the party challenging competency may be the defendant, the defendant's attorney, or the prosecutor. Given the fluid character of

the question of competency, it makes sense to place the burden on the party challenging competency to the extent it is necessary to assign a burden of proof.[1] We accordingly hold that the interwoven provisions of chapter 10.77 RCW reveal legislative intent to place the burden on the party challenging competency to prove by a preponderance of the evidence that the defendant is incompetent.

The dissent is concerned that if the burden is always placed on the party challenging competency, the trial judge's finding of incompetency will not be respected because parties could continually challenge it and continually place the burden on the defendant to prove his incompetency. Dissent at 2-3. The dissent's concern overlooks the competency scheme in 10.77 RCW. First, the trial judge did not issue an "order finding the defendant incompetent" as the dissent asserts. Dissent at 2. Following the requirements of the statute, the judge issued an order continuing the trial and committing the defendant for treatment based on its finding that Coley was incompetent and that treatment could render him competent. Moreover, placing the burden on the party challenging competency does not treat the judge's order "like it does not exist." Dissent at 2. To the contrary, the judge's order retains all the "force" that the legislature intended—the order stopped the proceeding and referred the defendant for treatment.

---

[1] In this unique area, the statutes also assign a duty to the court to question competency, even if no party is challenging it. As noted above, the process of restoring competency is the same regardless of who raises the issue, including the court. When the court is questioning competency, it makes little sense to assign a burden of proof to any party.

The subsequent competency hearing is not designed to address new competency concerns, but rather to evaluate the effectiveness of treatment ordered by the court.[2]

Although we have not explicitly held that the burden of proof lies with the party challenging competency, we have indirectly approved of this burden structure. In *Hurst*, for example, we sanctioned placing the burden of proof on the party seeking to commit an incompetent defendant under related chapter 10.77 RCW provisions. *Hurst*, 173 Wn.2d at 599-600, 603-04 (holding that preponderance of the evidence is the proper standard of proof and approving placement of that burden on the party seeking commitment under chapter 10.77 RCW); *cf. State v. Wilcox*, 92 Wn.2d 610, 611-13, 600 P.2d 561 (1979) (holding that RCW 10.77.040 did not violate due process for failure to assign the burden of proof where the State—the party seeking commitment—in fact assumed that burden).

Further, we have determined that the burden rests with the party challenging competency in other competency contexts. Most similarly, we have held that a party challenging the competency of a witness to testify bears the burden of proof. RCW 5.60.050 prohibits incompetent witnesses from testifying but, like chapter 10.77 RCW, does not explicitly assign the burden of proof. We interpreted the statute to assign the burden to the party challenging competency. *State v. Brousseau*, 172 Wn.2d 331, 341, 259 P.3d 209 (2011); *State v. S.J.W.*, 170 Wn.2d 92, 102, 239 P.3d 568 (2010). We have

---

[2] Moreover, remanding this matter for clarification does not make sense. The question of competency in this case arose during the first trial. After the judge found Mr. Coley competent, the case proceeded and ended in a mistrial. Thereafter, Coley was retried and convicted. There was no competency challenge by Coley, the prosecutor, or the judge in the second trial.

implied a similar burden structure where there is a question of the defendant's competency to be executed. In this context we have held that the party challenging competency—typically the defendant—bears the burden of making a threshold showing of incompetence. *State v. Harris*, 114 Wn.2d 419, 435-36, 789 P.2d 60 (1990). After this threshold showing has been made, the court must hold an adversarial hearing. *Id.* We have implied that the defendant retains the burden of proof at this subsequent hearing. *Id.* at 440. Our history of placing the burden on the party challenging competency in these related contexts supports our decision to do the same here where the defendant's competency to stand trial is questioned.

We hold that implicit in the statutes addressing competency to stand trial is placement of the burden of proof by a preponderance of evidence on the party challenging competency.[3]

   Chapter 10.77 RCW's burden of proof placement does not violate
   due process

Because the court complied with chapter 10.77 RCW by placing the burden on Mr. Coley, the only remaining question is whether this burden placement violates due process under the Washington and United States Constitutions. Coley argues that due process, as outlined by the United State Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), demands that the State bear burden of proof.

---

[3] At oral argument, the prosecutor conceded that the State carries the burden to prove competency following restoration treatment. The prosecutor offered no authority for this concession, and we decline to accept it. *State v. Drum*, 168 Wn.2d 23, 33, 225 P.3d 237 (2010) ("'[a] stipulation as to an issue of law is not binding on this court; it is the province of this court to decide the issues of law.'") (quoting *State v. Vangerpan*, 125 Wn.2d 782, 792, 888 P.2d 1177 (1995)).

But the Court held that the *Mathews* balancing test does not apply to state criminal process rules like the competency hearing at issue here. *Medina*, 505 U.S. at 442-43. In *Medina*, the California Legislature explicitly placed the burden on the defendant and the Court held that due process was not violated by this choice. *Id.* at 445-46. The Court held that due process does not mandate placement of the burden of proof on either party at pretrial competency hearings. *Id.* If the legislature instead had assigned the burden to the state, there would similarly be no due process problem. *See id.* Hence, the due process clause does not demand any particular burden of proof placement in competency hearings.

We have adopted the *Medina* due process framework for analyzing competency under chapter 10.77 RCW. *See, e.g., Hurst*, 173 Wn.2d at 601 ("Due Process Clause challenges arising in the context of competency hearings in criminal proceedings are governed by the analytical framework set forth in *Medina*."); *State v. Heddrick*, 166 Wn.2d 898, 904 n.3, 215 P.3d 201 (2009) (citing *Medina* for the proposition that "the *Mathews* balancing is not appropriate in criminal cases"). Because *Medina* holds that due process does not demand any particular burden placement in competency hearings, the legislature does not offend due process by placing it on the party challenging competency.

Coley makes no argument under *Medina* why due process was violated here. As *Medina* indicates, we must consider historical and contemporary practice as well as the "fundamental fairness" of the burden of proof question. *Medina*, 505 U.S. at 445-48;

*Hurst*, 173 Wn.2d at 605. Coley points to no strong historical or contemporary practice with regard to the burden of proof at competency hearings. *Medina*, 505 U.S. at 446-47, 449. Instead he relies exclusively on the *Mathews* balancing test, which does not apply.

At competency hearings in this state, all that due process requires is compliance with the mandates of chapter 10.77 RCW. *See Heddrick*, 166 Wn.2d at 904 & n.3 ("the procedures outlined in chapter 10.77 RCW satisfy the due process requirements"). The trial judge here followed the provisions of chapter 10.77 RCW. Accordingly, due process was not violated.

2. Right to Self-Representation

Mr. Coley argues that the trial court erred when it declined to address his request to proceed pro se pending a competency determination. Coley emphasizes his original unequivocal request to represent himself on April 20, 2009, and his reiterated request at the June 11, 2010, competency hearing. He claims that under *State v. Madsen*, 168 Wn.2d 496, 229 P.3d 714 (2010), the trial court cannot use perceived incompetency as an excuse for deferring a ruling on a motion to proceed pro se.

The Court of Appeals did not reach the self-representation issue since the court reversed on the burden of proof issue. Because we reverse the Court of Appeals, the self-representation issue must be addressed, and we do so here. *See* RAP 13.7(b). We conclude that the trial court did not abuse its discretion by failing to consider any of Coley's requests for self-representation because none of his unanswered requests were both timely and unequivocal.

15

a. Standard of review

Decisions on the right to self-representation are reviewed for abuse of discretion. *In re Personal Restraint of Rhome*, 172 Wn.2d 654, 668, 260 P.3d 874 (2011); *Madsen*, 168 Wn.2d at 504. The "ad hoc," fact-specific analysis of waiver of counsel questions is best assigned to the discretion of the trial court. *State v. Hahn*, 106 Wn.2d 885, 900-01, 726 P.2d 25 (1986) (emphasis omitted). A decision on a defendant's request for self-representation will therefore be reversed only if the decision is "manifestly unreasonable," relies on unsupported facts, or applies an incorrect legal standard. *Madsen*, 168 Wn.2d at 504 (citing *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

b. The trial court did not abuse its discretion by declining to rule on Coley's requests for self-representation because Coley made no unequivocal requests after he was deemed competent to stand trial

Criminal defendants have the federal and state constitutional right to self-representation. *Madsen*, 168 Wn.2d at 503 ("This right is so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice."); *Hahn*, 106 Wn.2d at 889. The Washington State Constitution, unlike the United States Constitution, explicitly states this right. WASH. CONST. art. I, § 22 (providing that "the accused shall have the right to appear and defend in person"). The implicit federal constitutional right is recognized in case law. *See Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)

(holding that the United State Constitution's Sixth Amendment right to counsel contains a corollary right to self-representation).

There is no automatic right to represent oneself. Rather, "courts are required to indulge in 'every reasonable presumption against a defendant's waiver of his or her right to counsel.'" *Madsen*, 168 Wn.2d at 504 (internal quotation marks omitted) (quoting *In re Det. of Turay*, 139 Wn.2d 379, 396, 986 P.2d 790 (1999). When a defendant asks to proceed pro se, the request must be unequivocal and timely. *Madsen*, 168 Wn.2d at 504. Unless these requirements are met, the motion will not be considered. *Id.*

A defendant's motion to act as pro se counsel may be granted only if the defendant is competent to stand trial and the motion is voluntary, knowing, and intelligent. *See Rhome*, 172 Wn.2d at 663; *Madsen*, 168 Wn.2d at 504; *Hahn*, 106 Wn.2d at 895.

Notwithstanding Mr. Coley's argument to the contrary, our cases do not cast doubt on the trial court's deferral of the April 2009 request. In *Madsen*, we faulted the trial court for failing to address stated competency concerns and instead using those concerns as an excuse for deferring a ruling on the defendant's request for self-representation. However, a trial court may cite competency concerns as a reason for deferring review of a motion for self-representation so long as that deferral is accompanied by the proper referral for treatment and evaluation. *See Madsen*, 168 Wn.2d at 510.

Mr. Coley was not eligible to exercise his right to self-representation until his competency was affirmatively established. *Hahn*, 106 Wn.2d at 895. The trial court properly deferred ruling on his April 2009 request to proceed pro se and ordered a

competency evaluation. *See Madsen*, 168 Wn.2d at 510 ("If the trial court was concerned with Madsen's competency, it should have ordered a competency hearing.").

Moreover, as the State argues, the trial court did not leave outstanding any unequivocal and timely requests for self-representation. Once the trial court held Mr. Coley's competency restored in June 2010, any subsequent unequivocal requests for self-representation would have been timely. *See Hahn*, 106 Wn.2d at 895. However, Mr. Coley did not make another unequivocal request to proceed pro se after the court deemed him competent to stand trial in June 2010. On June 15, 2010, Mr. Coley and the trial judge agreed that he should not proceed pro se. We acknowledge that the dialogue between Mr. Coley and the judge is not completely clear, but its murkiness only highlights the equivocal nature of any request Coley might have been trying to make. Mr. Coley's subsequent motion was similarly equivocal because the judge could not understand the motion and Coley did not endeavor to explain or pursue it further. Because Mr. Coley did not make any unequivocal request for self-representation after he had been deemed competent to stand trial, the trial court acted well within its discretion when it declined to engage in any inquiry into whether he wished to proceed pro se.

## CONCLUSION

We conclude that the legislature intended the burden of proof under chapter 10.77 RCW to rest with the party challenging competency. This placement of the burden does not offend due process. The trial court properly placed the burden on the party challenging competency—here the defendant—to prove incompetency. Accordingly, the

trial court did not abuse its discretion at the June 2010 competency hearing. Further, we hold that the trial court did not abuse its discretion by declining to rule on any of Mr. Coley's pro se requests to represent himself. A trial court is required to consider only motions that are timely and unequivocal, and the only such request Coley made was granted by the trial court in 2009.

We reverse the Court of Appeals and remand with instructions to reinstate the trial court findings of competency and guilt.

Madsen, C.J.

WE CONCUR:

NO. 88111-1

GORDON McCLOUD, J. (dissenting)—The defense argues that, at a hearing

to determine whether a defendant has been restored to competency, the State—the

party challenging the previously entered order finding the defendant incompetent—

has the burden of proving competence by a preponderance of the evidence. At oral

argument, the State took the same position. It represented that it had canvassed the

practice of prosecutors across Washington, weighed the competing interests at stake,

and—considering that history and practice—it was taking the same position as the

defense on this particular point. Specifically, the State argued that at a hearing to

determine whether a defendant, who was declared incompetent by the most recent

court order, has been restored to competency, the State—the party challenging the

previously entered order finding the defendant incompetent—bears the burden of proving competency by a preponderance.

I agree with both parties on this point. I think the statutes at issue here are most properly interpreted as placing the burden of proof on the party challenging the status quo. At the start of the trial, the status quo is usually the default presumption that a defendant is competent. *See In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 663 n.2, 260 P.3d 874 (2011) (recognizing "the general presumption of competency to stand trial" (citing *State v. Hahn*, 106 Wn.2d 885, 895, 726 P.2d 25 (1986))). If there is a question about competency and the judge enters an order of competency, the status quo remains a presumption of competency. But where, as here, the judge signs an order stating that the defendant is *not* competent, then the presumption of competency no longer exists. The trial judge's actual finding replaces that presumption.

Treating the trial judge's ruling like it does not exist does not make sense, and could not have been what the legislature intended. If the trial judge's finding of incompetency did not remain in force, then that finding would be deprived of all meaning—a party who disagreed with it could just keep coming in and challenging it, day after day, and keep placing the burden on the incompetent defendant to prove continuing incompetency. That seems time-consuming, counterproductive, and

disrespectful to the trial judge who must have given some serious thought to the matter before signing the order.

I think it is much more reasonable to interpret the statute to place the burden of proof on the party challenging the status quo. In this case, at the beginning of the trial, it was the defendant, Mr. Coley. On Mr. Coley's motion, the judge referred him to Eastern State Hospital (Eastern) for a competency evaluation. Based on that initial uncontested evaluation, the judge entered an order that Mr. Coley was competent, thus maintaining the status quo. But the judge again became concerned about the defendant's competency a few months later and ordered another evaluation at Eastern. Based on that second (also uncontested) evaluation, the judge ruled that the defendant lacked competency and signed an order requiring the State to transport the defendant to Eastern for treatment to restore competency. At that point, a new status quo was established by the judge's decision that the defendant lacked present competency to proceed.

The State then took the steps that the trial court ordered. It sent Mr. Coley to Eastern and provided treatment, and then the State's expert submitted reports and testified to the court. The State's expert concluded that Mr. Coley had been restored to competency. But the trial court's order of incompetency was still in force; only

the trial court, not the expert, has the power to make the ultimate legal determination of competency or incompetency.

To be sure, the expert's reports and testimony alone can carry the State's burden of proving restoration to competency. And that may have happened in this case. It is true that the trial court made some statements at the restoration hearing to the effect that it was placing the burden of proving incompetency on the defendant. But the trial court also made some statements at the restoration hearing suggesting the opposite; it expressly considered the testimony of both the State's expert and the defense's expert, as well as the testimony of the defendant (who testified at the competency hearing), before concluding that it believed the State's expert that the defendant's competency had been restored. Verbatim Report of Proceedings (June 11, 2010) at 156-59.

I therefore disagree with the majority's decision that the burden of proof always lies with the party challenging competency. A trial court's actual finding of incompetency changes the status quo, and the burden of proof properly rests with the party challenging that status quo—here, the State, not the defendant. Since it is not clear whether the trial court in this case applied the correct burden of proof or

not, I would remand for clarification.[1] If the trial court did not apply the correct standard of proof, then a reconstructed competency hearing is not appropriate—reversal and remand is required. *Drope v. Missouri*, 420 U.S. 162, 183, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *see also In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 16 P.3d 610 (2001). Therefore, I respectfully dissent.

---

[1] The majority implies that we cannot grant relief in this case because the competency issue is moot due to an initial mistrial. But the parties and the majority have not treated this case as moot or even raised the issue. And it would not make sense to do so. The trial judge declared a mistrial in October 2010 because a witness revealed inadmissible evidence to the jury, and a new trial was held in December 2010 before the same judge. That mistrial was unrelated to, and thus had no effect on, Coley's claim that the trial court erred in allocating the burden of proof at the competency hearing held in June 2010.

Gordon McCloud, J.

Fairhurst, J.