

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70508-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ROBERT WOLD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 15, 2014 |

SPEARMAN, C.J. — Robert Wold was charged with felony harassment, unlawful imprisonment, four counts of assault in the second degree, and two counts of assault in the fourth degree. The harassment count, unlawful imprisonment count, and two of the assault counts also alleged two aggravating factors. During pre-trial proceedings, Wold's counsel raised a question concerning Wold's competency and the trial court ordered an evaluation. After multiple hearings, evaluations and testimony, the trial court found that Wold failed to demonstrate that he lacked competency to stand trial. Wold pleaded guilty as charged. The court imposed an exceptional sentence of 20 years and a 15 year no-contact order.

On appeal, Wold seeks to overturn his convictions, claiming that (1) the trial court deprived him of due process by incorrectly placing the burden on him to prove his incompetency; (2) he lacked sufficient knowledge of the elements of unlawful imprisonment in order to plead guilty knowingly and voluntarily; and (3) the trial court exceeded its statutory authority by imposing a no-contact order

longer than the statutory maximum for his most severe crime. We disagree and affirm the trial court's judgment and sentence.

## FACTS

Robert Wold was charged with felony harassment, unlawful imprisonment, and two counts of second degree assault (reckless infliction of substantial bodily harm and strangulation) against his former girlfriend, Melinda Hopper. The State alleged that the crimes against Ms. Hopper involved domestic violence and an ongoing pattern of abuse of multiple victims over a prolonged period of time. The State also charged him with second degree assault against Ms. Hopper's father and two counts of fourth degree assault, one each against Ms. Hopper's two sons. In addition the State charged Wold with second degree assault against an unrelated individual.

In pre-trial motions, Wold indicated that he intended to present a diminished capacity defense. After Wold moved to dismiss one of his attorneys from the case, counsel raised a concern about his competency and ability to assist in his defense. Wold's counsel moved for a competency evaluation and the trial court ordered Wold to be evaluated at Western State Hospital ("WSH"). The WSH evaluation found that Wold did not have the capacity to understand the nature of the proceedings against him or to assist in his own defense.

At the initial competency hearing, the trial court found that the WSH report consisted of review of a limited number of records and a single interview. The trial court concluded the report was inadequate to determine Wold's competency

and granted the State's request for an independent evaluation. No determination of Wold's competency was made at that time.

At the later competency hearings, the trial court heard testimony from the State's independent expert, Dr. Brian Judd; WSH evaluators Dr. Sarah Leisenring and Dr. Johnathan Sharrette; and defense expert, Dr. Craig Beaver. Upon consideration of the reports, testimony, and other evidence admitted at the hearing, the trial court concluded Wold did not meet his burden of demonstrating his incompetency.

Wold pleaded guilty to each crime and admitted the aggravating factors alleged in counts I, III, IV, and V. The trial court imposed an exceptional sentence of 240 months, running the time imposed on counts I, IV, V, and VI consecutively. The trial court also imposed a 15-year no-contact order as to Ms. Hopper and two other persons who testified at the sentencing hearing.[1]

## DISCUSSION

### Burden of Proof of Incompetence

Wold first argues his convictions should be reversed because the trial court incorrectly placed the burden to prove incompetency on him and therefore deprived him of his due process right to a fair trial. Chapter 10.77 RCW governs the procedures and standards used by the trial court to determine a defendant's competency to stand trial. State v. Wicklund, 96 Wn.2d 798, 801, 638 P.2d 1241

---

[1] Although the basis for no-contact orders as to two witnesses is unclear, Wold does not contest the imposition of the orders on this ground and we do not address the issue in this opinion.

(1982). Under this chapter, a defendant is competent to stand trial if he has the capacity to understand the nature of the proceedings against him and assist in his own defense. RCW 10.77.010(15). Whenever there is reason to doubt a defendant's competency to stand trial, the court shall order an evaluation of the defendant's mental condition. RCW 10.77.060. Upon conclusion of all necessary evaluations, the trial court determines whether the defendant is competent to stand trial. RCW 10.77.084(1)(a). The issue before us is whether the State or the defendant bore the burden of proof at the proceeding below to establish the defendant's competency. The question of who bears the burden of proof on a given issue is a question of law that is reviewed de novo. Davita, Inc. v. Wash. State Dep't of Health, 137 Wn. App. 174, 184, 151 P.3d 1095 (2007).

Chapter RCW 10.77 places the burden of proof by a preponderance of evidence on the party challenging competency. State v. Coley, 180 Wn.2d 543, 556, 326 P.3d 702 (2014).[2] In Coley, the Supreme Court held that "the legislature did not intend to create different procedures for initial competency determinations and competency restoration hearings." Coley, 180 Wn.2d at 554. The Court reasoned that because the issue in both proceedings is the defendant's competency, the placement of the burden of proof always remains with the party challenging competency. The burden does not shift depending on a distinction between an initial competency determination and a competency restoration hearing. Id. The Court also held that the placement of the burden of proof on the

---

[2] We note that Coley was decided after the parties completed the briefing filed in this case.

defendant did not violate due process under the Washington and United States Constitutions. Coley, 180 Wn.2d at 557-9.

Based on Coley, we conclude the trial court correctly placed the burden of proof on Wold and did not deny him due process. There was no error.

Notice of the Elements of the Offense

Wold next argues that his conviction for unlawful imprisonment should be reversed because he did not have sufficient notice of the charge and therefore was incapable of pleading guilty to it knowingly, intelligently, and voluntarily. He alleges that the information in his case was constitutionally insufficient because it did not include the definition of "restraint," which he alleges is an essential element of the crime of unlawful imprisonment. Without adequate information about the elements of the crime, he contends he was unable to understand how his conduct satisfied those elements. We disagree.

In criminal cases, the accused have the constitutional right to know the charges that have been brought against them. U.S. Const. Amend. VI; Wash. Const. Art. I, § 22. The State provides formal notice of the charges in the information or charging document. CrR 2.1(a)(1). The information is constitutionally sufficient "only if all essential elements of a crime, statutory and nonstatutory, are included in the document. . . ." State v. Vangerpen, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995). Allegations of constitutional violations are reviewed de novo. State v. Siers, 174 Wn.2d 269, 273-4, 274 P.3d 358 (2012).

The charging document stated that Wold "did knowingly restrain" another person contrary to RCW 9A.40.040. RCW 9A.40.010(6) defines "restrain" to

- 5 -

mean "to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." Until recently, there had been a split between different panels of this Court as to whether the statutory definition of "restrain" must be alleged in the information. See State v. Johnson, 172 Wn. App. 112, 140, 297 P.3d 710 (2012) (aff'd in part, reversed in part, 180 Wn.2d 295, 325 P.3d 135 (2014); State v. Phuong, 174 Wn. App. 494, 545, 299 P.3d 37 (2013). In State v. Johnson, 180 Wn.2d 295, our state Supreme Court resolved this issue, albeit, after the parties submitted their briefing in this case. The Court held that as a general matter, the State need not include the definition of an essential element in the charging document. Id. at 302. In addition, the Court specifically held that the State need not include the definition of "restrain" in a charging document alleging the crime of unlawful imprisonment. Id. Accordingly, we reject Wold's argument and hold that the State's failure to include the definition of "restrain" in the information filed in this case was not error.

Duration of No-Contact Order

Wold assigns error to the 15-year duration of the no-contact order imposed in this case. He argues the court exceeded its sentencing authority by imposing a provision that exceeded the statutory maximum sentence for the particular crimes he committed. We disagree.

A sentencing court may impose crime-related prohibitions, including no-contact provisions, when sentencing an offender for a felony conviction. RCW 9.94A.505(8). The prohibition may not be for a period of time longer than the

statutory maximum sentence for the crime. State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). Wold argues that the no-contact order cannot be imposed for a period longer than ten years, because he only was convicted of Class B felonies with statutory maximum punishments of ten years.[3] We disagree.

State v. France, 176 Wn. App. 463, 474, 308 P.3d 812 (2013), rev. denied, 179 Wn.2d 2015, 318 P.3d 280 (2014), is instructive on this issue. In that case, the defendant, France, pleaded guilty to nine counts of felony harassment, which is a class C felony with a statutory maximum punishment of five years. RCW 9A.46.020(b); RCW 9A.20.021(c). The trial court sentenced him to 60 months on each count, divided the counts into groups of three and ordered the counts within each group to run concurrent with each other, but the groups to run consecutively for a total of 180 months or 15 years. Id. at 467. The trial court also imposed a 15 year no-contact order with the victims. On appeal, we upheld the duration of the no-contact order, concluding that as part of an exceptional sentence, a trial court has discretion to impose a no-contact order that lasts for the length of the sentence. Id. at 474.

Here, Wold's exceptional sentence was for 20 years and the trial court imposed a no-contact order of 15 years. The trial court chose this length after considering the five and ten year statutory maximum punishments for Wold's crimes of unlawful imprisonment and assault in the second degree, respectively.

---

[3] Wold does not challenge the trial court's authority to impose an exceptional sentence as a result of the aggravating circumstances on counts I, III, IV, and V.

No. 70508-3-I/8

The length of the no-contact order imposed by the trial court was well within its authority. There was no error.

The judgment and sentence is affirmed in all respects.

*Affirmed.*

Spearman, C.J.

WE CONCUR:

Leach, J.

Schindler, J.